Jihad M. Smaili, Esq. [262219]
Adam K. Obeid, Esq. [247188]
SMAILI & ASSOCIATES, PC
Civic Center Plaza Towers
600 W. Santa Ana Blvd, Suite 202
Santa Ana, California 92701
714-547-4700
714-547-4710 (facsimile)
jihad@smaililaw.com
adam@smaililaw.com


Attorney for Plaintiff
California Surgical Institute, Inc.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SURGICAL INSTITUTE, INC., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> AETNA LIFE AND CASUALTY (BERMUDA) LTD., a corporation form unknown;  AETNA INTERNATIONAL, INC., a California corporation; and DOES 1 to 50, inclusive, <br><br> Defendants. | **Case No.:** <br><br><br><br><br><br> **COMPLAINT** <br><br> **REQUEST FOR JURY TRIAL OF NON-ERISA BASED CLAIMS** |

COMPLAINT

Plaintiff California Surgical Institute, Inc., alleges against Defendants Aetna Life And Casualty (Bermuda) Ltd., and, Aetna International, Inc., as follows:

## PARTIES

1.     Plaintiff California Surgical Institute, Inc. ("CSI" and/or "Plaintiff") is a corporation, duly formed, organized and existing under the laws of the State of California, having its principal place of business in the City of Brea, County of Orange, State of California.  Plaintiff is primarily engaged in the business of providing medical services.

2.     Plaintiff is informed and believes and thereon alleges that Defendant Aetna Life And Casualty (Bermuda) Ltd (hereinafter "Aetna"), is a corporation, form unknown, that regularly and routinely transacts business in the State of California.  Plaintiff is informed and believes and thereon alleges that Aetna is engaged in the business of providing insurance and/or reinsurance services related to, *inter alia*, medical claims and/or benefits.

3.     Plaintiff is informed and believes and thereon alleges that Defendant Aetna International, Inc. (hereinafter "International"), is a California corporation that regularly transacts business in the State of California.  Plaintiff is further informed and believes and thereon alleges that International is engaged in the business of providing insurance and/or reinsurance services related to, *inter alia*, medical claims and/or benefits.

4.     Plaintiff is informed and believes and thereon alleges that International is the parent corporation of Aetna, and, that Aetna is a subsidiary of International.  Plaintiff is further informed and believes and thereon alleges that the actions of International and Aetna, as alleged herein, were known by the other, and were ratified and consented to by the other.  Accordingly, Plaintiff shall refer to Aetna and International in this complaint, jointly and severally, as "Aetna Defendants."

COMPLAINT

5.    The true names and capacities, whether individual, corporate, associate, or otherwise, of defendant DOES 1—50, inclusive, are unknown to Plaintiff who therefore sues said defendants by such fictitious names.  Plaintiff will seek leave to amend this complaint to show their true names and capacities when ascertained.  Plaintiff is informed and believes and thereon alleges that each defendant named herein as a DOE was responsible in some manner for the occurrences and damages alleged herein.

6.    Each reference in this complaint to "Aetna Defendants" refers, jointly and severally, to Defendants Aetna and International, and also refers to all defendants sued under fictitious names.

7.    Plaintiff is informed and believes and thereon alleges that the Aetna Defendants, and each of them, had full knowledge or should have reasonably known the true nature of the wrongful conduct of each other defendant, and aided and abetted such wrongful conduct, by condoning such conduct, encouraging such conduct, providing substantial assistance and/or adopting the acts of others.

## VENUE AND JURISDICTION

8.    This Court has *in personam* jurisdiction over Aetna Defendants because they have done business in the County of Orange, State of California, during the relevant time period giving rise to this lawsuit.  Furthermore, Aetna Defendants have committed torts, entered into contracts, and taken other actions, in whole or in part, in the County of Orange, State of California, and have had continuing and ongoing contacts with the State of California.  Additionally, the wrongful conduct alleged herein, including, without limitation, the wrongful denial of claims, occurred with regard to services provided in the State of California.

9.    This Court has original subject matter jurisdiction based upon Plaintiff's claims which arise under the Employment Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. 1001 et seq., including, without

limitation, 29 U.S.C. 1132(a)(1)(B).

10.     This Court has pendent jurisdiction over any California state law claims relating to the Aetna Defendants' actions relating to the claims designated as non-ERISA in which there are other grounds for federal jurisdiction.  The non-ERISA claims arise out of a common nucleus of operative facts as the ERISA claims, and the claims would normally be expected to be tried in one judicial proceeding.

11.     This Court has supplemental jurisdiction under 28 U.S.C 1367 over any non-ERISA claims based upon the Aetna Defendants' actions that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy, or involve the same pattern of conduct involved in the claims in which there are other grounds for federal jurisdiction.

12.     Venue is proper because a substantial part of the events made the basis for this lawsuit occurred in the Central District of California, including, without limitation, the County of Orange, and/or other counties within the Central District of California.

## GENERAL ALLEGATIONS

13.     Plaintiff is informed and believes and thereon alleges that:

   a) Aetna Defendants are insurance companies that provide health insurance coverage to certain of their insureds, and handle the processing, adjudication, denial and/or payment of medical claims.

   b) Aetna Defendants provide insurance coverage to individuals, and also to groups such as employer-sponsored health plans, as well as groups that are not employer sponsored health plans.

   c) Aetna Defendants also provide insurance to employer health plans providing health care coverage to employees of some governmental employers and religious organizations not within

the coverage of ERISA.

d) Aetna Defendants are also in the business of contracting with employer sponsored health plans for some self-insured companies (both ERISA and non-ERISA companies). In such arrangements, the plan typically delegates to the Aetna Defendants some of the functions and responsibilities of the Plan Administrator for adjudication and payment, and as such, handles the processing, adjudication, approval, denial and/or payment of claims for medical benefits provided by the health plans.

e) Aetna Defendants, pursuant to their insurance contracts and/or their contracts with the benefit plans providing health care benefits to certain patients listed on Attachment A, were responsible for paying legitimate benefit claims within the coverage of the policy or Plan, and were responsible for notifying the covered individual of reasons if the claims were disallowed.

f) Pursuant to its contracts with the Plans that provided health care coverage to the patients identified by their insured ID, date of procedure and Claim Numbers listed on Attachment A, when claims were submitted to the Aetna Defendants for payment, Aetna Defendants had the responsibility to adjudicate whether to pay (or allow) the claim, or whether to disallow it.

g) In making claims approval decisions as described above, Aetna Defendants exercised discretion, and acted as the "Claims Administrator" and *de facto* Plan "Administrator," whether or not so designated in the Plan documents.

h) In making claims approval determinations, Aetna Defendants exercised discretion, and was a fiduciary as defined by ERISA as to claims relating to Plans to which ERISA applied.

COMPLAINT

14.    Plaintiff CSI is, among other things, a provider of health care services, and, is a leading medical/surgical practice in Southern California. CSI offers board-certified surgeons. CSI offers fully accredited state-of-the-art facilities that boast the most advanced technologies and a clinical staff specialized in reconstructive and other surgical procedures ensuring the utmost safety and highest level of care for patients. Additionally, CSI partners with leading physicians who enjoy the privilege of utilizing CSI's state-of-the-art medical facilities to perform the "professional component" of performing surgical procedures and treating patients.

15.    Plaintiff is informed and believes and thereon alleges that the Aetna Defendants regularly pay and/or allow the majority of claims for the types of services performed by CSI and its physicians, at issue in this case, by other providers of these procedures who are in the Aetna network. Specifically, Plaintiff previously received from the Aetna Defendants multiple medical benefit payments for claims tendered to the Aetna Defendants by Plaintiff for similar claims at issue in this lawsuit.

16.    The treating physicians of the patients whose unpaid balances are listed on Attachment "A" determined that the procedures at issue giving rise to the instant claims were medically necessary.

17.    Plaintiff submitted a claim to Aetna Defendants for each service listed on Attachment "A." Aetna has disallowed all claims for services that Plaintiff rendered to Aetna Defendants enrollees listed on Attachment A.

18.    Aetna Defendants have refused to allow and make payment for these services without valid reason.

19.    In all instances, Aetna Defendants allowed and paid the corresponding professional component claim by the physician, while disallowing Plaintiff's component claims. For the claims listed on Attachment "A," specifically, Aetna Defendants made a unilateral determination that claims made

by physician's for his/her professional component portion of the procedure were *covered and allowable*, while disallowing Plaintiff's component claims for the very same service.

20.    Prior to the denial of claims listed on Attachment "A," Aetna Defendants allowed and paid claims that Plaintiff submitted to Aetna Defendants for payment. Aetna Defendants then began wrongfully refusing to pay Plaintiff's charges.

## IDENTIFICATION OF DISALLOWED CLAIMS

21.    Attachment "A" lists patients (identified through claim numbers insured ID, and date of procedure) whom Plaintiff provided medically necessary services and for which payment is still due.  Individual submissions relative to each patient were delivered to Aetna Defendants prior to the filing of this lawsuit. Attachment "A" also contains the dates of service and the unpaid amount due from Aetna Defendants where medically necessary services were provided.

22.    For each claim listed on Attachment "A," the patient's treating physician approved an order for the needed services attesting to the fact that said services were medically necessary, stated the diagnosis, and listed some or all of the indications establishing the medical necessity for the surgery.

23.    All claims listed under Attachment "A" are claims that were wrongfully disallowed by the Aetna Defendants, and all of which were claims within the coverage of ERISA.

24.    The specific services provided by Plaintiff relating to each patient are listed on Attachment "A."

25.    Plaintiff is informed and believes and thereon alleges that in most instances, the treating physician also submitted separate claims to Aetna Defendants that includes the physician's certification as to some or all of the patient's diagnoses, identified by diagnosis code. For all claims listed in Attachment "A," the Aetna Defendants have already determined that these claims

are within the coverage of the Plans or policies at issue, and has paid or allowed the professional component of these same services, while disallowing Plaintiff's claims.

26.    Plaintiff is informed and believes and thereon alleges that Aetna Defendants failed to allow and/or pay claims for services rendered by Plaintiff to the claims listed on Attachment "A" for reasons that were invalid, or without giving a reason, or failed to process such claims. Plaintiff is further informed and believes and thereon alleges that Aetna Defendants were obligated to allow and/or pay for the services identified on the claims Plaintiff submitted to Aetna Defendants because they were within the coverage of the subject insurance plans and/or insurance policy that Aetna Defendants were obligated by contract and law to allow and/or pay.

27.    Aetna Defendants have given Plaintiff inconsistent and/or varied and/or no reasons for its refusal to allow and pay the claims on Attachment "A," and has failed to identify the actual reasons.

28.    Plaintiff is informed and believes and thereon alleges that Aetna Defendants' failure to allow and pay Plaintiff's claims itemized on Attachment "A" is without merit as a matter of law, in that Aetna Defendants have already determined that the surgical procedures provided are allowable under the coverage of the patient's respective plans and insurance policies. Although Aetna Defendants failed to pay Plaintiff for providing medically necessary services for each of the listed surgeries, Aetna Defendants nevertheless allowed and/or paid the physician's claim for the "professional component" of these surgeries. Paying or allowing the professional component, but failing to pay and/or allow Plaintiffs claim for the technical component of the same is an inconsistency and an admission by Aetna Defendants that demonstrates, beyond question and as a matter of law, that the refusal to pay Plaintiff for the same service was unjustified.

29.    Aetna Defendants' determination in conjunction with the

professional component claims that the services were within the coverage of the applicable Plan also constitutes its determination that Plaintiff's technical component claims for the same surgical procedures were likewise within the coverage of the Plan.

## FAILURE TO ADJUDICATE CLAIMS

30.     Aetna Defendants were required by 29 CFR 2560.503-1(g) to process and adjudicate claims that were submitted by providers for services covered by ERISA, and if disallowed, to provide an adverse benefit determination – with articulated reasons for the determination – that could be appealed.

31.     Plaintiff is informed and believes and thereon alleges that Aetna Defendants failed to properly process certain of Plaintiff's claims, although the claims were submitted on fully completed standard claims submission forms, including an accurate diagnosis code and procedure codes.

32.     Plaintiff is informed and believes and thereon alleges that Aetna Defendants were required to adjudicate claims that were submitted by Plaintiff. On information and belief, however, Aetna Defendants asserted that further review of certain claims was necessary, but then Plaintiff never received further communication that it had taken any further action on the claim.  On other claims, Aetna Defendants requested copies of records from Plaintiff, which Plaintiff provided, but Aetna Defendants still failed to allow or pay the claims, asserting insufficient information to allow the claim and/or no medical necessity and/or in some instances, outright failing to process the claim.  Yet, in all cases at issue, Aetna Defendants paid or allowed the physician's professional component claim for the same surgical procedure based upon the information the physician submitted, demonstrating that Aetna Defendants' obviously had sufficient information to process and allow claims relating to said procedures and to determine that the service was a covered benefit.

33.     Plaintiff is informed and believes and thereon alleges that Aetna

Defendants were obligated to properly process and adjudicate Plaintiff's claims, even if disallowed, so that Plaintiff could appeal the adverse benefit determination. By failing to properly process certain of Plaintiff's claims, Aetna Defendants waived defenses to the claims that it failed to raise.

34.    As to claims submitted by Plaintiff that Aetna Defendants failed to process and provide an appealable adverse benefit determination, Aetna Defendants are precluded from contending that Plaintiff did not exhaust administrative remedies.

35.    Plaintiff is informed and believes and thereon alleges that other excuses given by Aetna Defendants, aside from the foregoing, are all equally in an effort to justify refusal to allow or pay Plaintiff s claims and are similarly without merit.

## AETNA'S CONFLICT OF INTEREST

36.    Plaintiff is informed and believes and thereon alleges that in all of the claims listed on Attachment "A," Aetna Defendants served as an insurer as well as Plan and/or claims administrator for employer-sponsored plans and individuals, so that allowing payment of claims reduces its profit. This creates an inherent conflict of interest in Aetna Defendants' claims adjudication decision-making.

37.    Aetna Defendants' role as an insurer creates an incentive for Aetna Defendants to prevent patients from utilizing services, and to disallow claims for services, even those medically necessary, particularly for the services of providers who it has not accepted into its network and to whom Aetna's fee schedule and other network agreement terms are not applicable.

38.    Plaintiff is informed and believes and thereon alleges that Aetna Defendants denied and/or failed to process Plaintiff's claims, in part, because Aetna Defendants were inherently conflicted from approving such claims.

///

Smaili & Associates

COMPLAINT

## AETNA DEFENDANTS' FAILURE
## TO PROVIDE DUE PROCESS

39.     In many instances, Aetna Defendants' communication to Plaintiff has failed to communicate the true basis for its adverse claim determination, as indicated by entries contained in Aetna Defendants various correspondence.  This prevented Plaintiff from addressing the reason for any purported denial and/or from properly seeking an appeal.

40.     In many instances, Plaintiff received no response and/or an incomplete response to its submission of records or filing of an appeal despite the passage of many months.

41.     Aetna Defendants further failed to communicate the "policy" that it now claims it was applying in refusing to process Plaintiff's various appeal requests.

## PLAINTIFF'S STANDING BASED UPON
## ASSIGNMENTS OF BENEFITS

42.     Plaintiff has derivative standing to bring all claims arising from Aetna Defendants' failure to allow and pay claims for medical services, including, without limitation, claims based upon 29 U.S.C. §1132(a)(1)(B) and other claims, because each patient listed on Attachment "A" has given Plaintiff, a health care provider, a signed assignment of benefits, including, without limitation, an assignment authorizing payment of medical benefits to Plaintiff for services rendered.

43.     The Circuit Courts of Appeal recognize that a valid assignment of benefits given to a health care provider by a patient gives that provider derivative standing to enforce the patient's right to exercise the patient's rights to recover medical benefits provided in an employer-sponsored health benefit plan within the coverage of ERISA.

44.     Plaintiff is informed and believes and thereon alleges that the Plans

Smaili & Associates

COMPLAINT

providing medical benefits to the patients on Attachment "A" do not contain a valid, unambiguous prohibition on assignment of healthcare benefits to a health care provider.

45.    Plaintiff is informed and believes and thereon alleges that the Plan applicable to each patient on Attachment "A" either:

a) Does not have any language suggesting that assignment of benefits is prohibited;

b) Has language that is an invalid attempt to prohibit assignment of benefits under controlling law;

c) Has language that is ambiguous, and/or is inconsistent with other language in the Plan that suggests that assignment of benefits is permissible.

d) Has language that is not intended to apply to assignment of benefits to a healthcare provider, but rather is intended as a "spendthrift provision" as to other aspects of the Plan, as can be determined from the language of the Plan.

46.    Plaintiff is informed and believes and thereon alleges that Aetna Defendants waived any provision that purports to prohibit assignments of benefits based upon such an alleged prohibition, and is estopped to raise it at this late date, by failing to include this as a reason for non-payment of claims on its Explanation of Benefits sent to the patient and Plaintiff relating to any claim listed on Attachment "A."  As to medical services within the coverage of ERISA, Aetna Defendants were required by 29 U.S.C. 1133 and its related regulations, including 29 CFR 2560.503-1(g), to state every reason for disallowance of submitted claims, and to cite any portions of the Plan relied upon in disallowing the claim, in addition to other requirements.

47.    Plaintiff is informed and believes and thereon alleges that none of the documents that Aetna Defendants sent to Plaintiff or any patient on

COMPLAINT

Attachment "A" based disallowance of claims upon the fact that it was made pursuant to an assignment of benefits.

48.     Aetna Defendants waived the right to reject assignments of benefits based upon such an alleged prohibition and is estopped to raise it at this late date, by its allowance and/or payment of the professional component of services on Attachment "A," based upon assignments of benefits.

49.     Plaintiff is informed and believes and thereon alleges that in some instances the health benefit plan contractually requires Aetna Defendants to notify the enrollee if it is rejecting the assignment, and there was no such notification in any case.

50.     Plaintiff provided Aetna Defendants with copies of the relevant assignment of benefit forms prior to the outset of this litigation.  Plaintiff offered to provide more if needed; Aetna Defendants have not requested additional forms.

51.     Plaintiff is informed and believes and thereon alleges that Aetna Defendants have failed to communicate that there was any issue relating to the validity of Plaintiff's assignments of benefits or to cite assignment of benefits as a reason for disallowing any claim during the claims adjudication process.

52.     Aetna is obligated by 29 U.S.C. 1133 and 29 CFR 2560.503-1(g) to communicate information to participants and beneficiaries when a claim for Plan benefits relating to an ERISA plan is disallowed. This includes the reasons for failure to pay benefits as to any claims, and the sections of the Plan upon which disallowance is based.  Aetna Defendants' failure to cite assignment as a reason for disallowance not only waives that defense in this litigation, it constitutes Aetna Defendants' admission that the applicable Plan language is not intended to prohibit assignment of benefits in this setting.

53.     Plaintiff is informed and believes and thereon alleges that Aetna Defendants failed to communicate that it was rejecting assignment upon receipt of any claim involved in this litigation.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**
## **AND FUTILITY**

54.    For each disallowed claim for each patient referenced on Attachment "A," Plaintiff has either received a letter stating Plaintiff has exhausted all appeal procedures, or has filed an appeal and has not received a final response, or has filed an appeal and received a final response, in circumstances sufficiently exhausting administrative remedies due to the futility of waiting and/or proceeding further.  In cases subject to ERISA, Aetna Defendants' failure to comply with 29 CFR 2560.503-1(g) precludes Aetna Defendants from asserting failure to exhaust administrative remedies.

55.    Plaintiff is informed and believes and thereon alleges that no appeal procedure is outlined in Plans at issue in this lawsuit.  In any event, Aetna Defendants were required by 29 CFR 2560.503-l(g)(1)(iii) to communicate this process to Plaintiff.   Aetna Defendants failed to communicate the appeal procedure to Plaintiff.  Aetna Defendants only informed Plaintiff that the process, according Aetna Defendants' communications, allow 180 days for the first appeal to be filed.  Plaintiff initiated appeals in compliance with the appeal procedures identified in Aetna Defendants' adverse benefit determinations as complying with the Plan procedure.

56.    In the absence of being furnished the Aetna Defendants' appeal policy, Plaintiff's efforts to appeal complied with the appeal process set forth in sparse communications from Aetna Defendants. The appeal process followed by Plaintiff thus complied with any administrative remedy set forth in the Plans, if any, in that Aetna Defendants were required by 29 CFR 2560.503-1(g)(1)(iii) to communicate to Plaintiff a description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

COMPLAINT

57.     For each disallowed claim for each referenced patient on Attachment "A", Plaintiff has promptly filed an appeal in compliance with the appeal procedure specified in the adverse claim determination, if so provided.     If permitted, Plaintiff re-appealed to the next level when a response was received, until Aetna Defendants stated that its appeal process was concluded or did not provide Plaintiff an opportunity to appeal in its communication.

58.     Plaintiff is informed and believes and thereon alleges that a final appeal letter has been received on the appeals of each patient listed on Attachment "A" and/or Aetna Defendants admit to the exhaustion of administrative remedies.

59.     The clear and positive conclusion from the facts alleged herein is that completing Aetna Defendants' appeal process any further will certainly be futile.

60.     Plaintiff is informed and believes and thereon alleges that as to each claim on Attachment "A," Plaintiff had, at the time of the filing of this lawsuit, exhausted all administrative remedies to the maximum extent possible.

61.     Plaintiff is informed and believes and thereon alleges that Aetna Defendants' consistent disallowance of Plaintiff's claims and refusing to reverse its action despite appeal over the previous two years, while simultaneously allowing the technical component claims, demonstrate that the reasons for disallowance were invalid, and that further appeals (for which a process exists and are allowed) would be futile.

62.     Plaintiff is informed and believes and thereon alleges that some appeals received no response from Aetna Defendants despite the passage of several months; an inordinate amount of time, which should be treated as exhaustion of remedies.

63.     On none of the subject claims subject to exhaustion of administrative remedies have Aetna Defendants changed the disallowance

decision on appeal and allowed payment for Plaintiff's medical services prior to the filing of this lawsuit.

64.    Plaintiff is further informed and believes and thereon alleges that Aetna Defendants' disallowance of claims for Plaintiff's medical services for the past two years with regard to the Plan at issue in this lawsuit establishes with clear and positive certainty that further exhausting Aetna Defendants' appeal process would certainly be futile.

65.    Plaintiff is informed and believes and thereon alleges that ERISA contains no statutory requirement that administrative remedies be exhausted. Plaintiff's use of the appeal process in each case complies with the policy considerations behind the judicial policy of encouraging use of administrative remedies, and the inclusion of such cases in this litigation complies with the policy objective of efficient and inexpensive determination of the validity of adverse benefit determinations.

66.    By including in this lawsuit the claims of patients with similar issues regarding unpaid claims, and in which an appeal has been filed, but not necessarily concluded, the policy objectives of requiring exhaustion of administrative remedies are still served, including:

    a) Reducing the cost involved by resolving similar issues in the same proceeding;

    b) Providing for consistency of decisions on similar issues by resolving them in the same proceeding;

    c) Because an appeal has already been filed long ago on each patient's claims, Aetna has had an opportunity to develop an administrative record of its actions, and an opportunity to reverse and correct its disallowance of Plaintiff s claims (although it has consistently failed to do so).

67.    Plaintiff is informed and believes and thereon alleges that

irregularities in records of Aetna Defendants claims adjudication process also require determination in this lawsuit of claims on which Plaintiff alleges that an appeal has been filed, whether or not shown as exhausted in Aetna Defendants' records. In some cases, Plaintiff has filed an appeal, and has submitted additional information in some instances, but never received any further communication of the results of the appeal despite the passage of many months. In some instances, Aetna Defendants' appeal files do not reflect that an appeal was timely filed, although Plaintiff's records reflect that an appeal was filed by Plaintiff. Exhaustion should not be required where Aetna Defendants fail to acknowledge the filing of the appeal and/or fails to complete the appeals process.

68.     Plaintiff is informed and believes and thereon alleges that Aetna Defendants have had the opportunity to render a decision and develop a factual record in the time that has passed since the patients' claims on Attachment "A" were transmitted to Aetna Defendants.

69.     Additional circumstances demonstrating that administrative remedies will be futile are that:

a) Aetna Defendants have consistently disallowed Plaintiff's claims for services under the subject Plan over the past two years;

b) Aetna Defendants have not reversed position on appeal on any of the claims which have been administratively exhausted;

c) The claims on which the appeals have not been completed are similar or identical to those in which the administrative appeals have been completed, providing a clear and positive indication of futility, and that it is certain that Aetna Defendants' decisions will be unfavorable on the claims which appeals have not been completed.

70.     Plaintiff is informed and believes and thereon alleges that not

including the claims of patients whose appeals have been filed but not finally concluded in this litigation would serve none of the policy objectives for requiring exhaustion of administrative remedies in that:

a) Requiring a separate lawsuit would increase the costs of resolving the issues;

b) It could possibly result in inconsistent determinations;

c) It would increase, rather than reduce, the number of ERISA lawsuits;

d) It would delay resolution in those cases;

e) There would be no reduction of "frivolous lawsuits";

f) The scope of disallowed and/or unpaid claims in relation to the subject Plan are currently defined.

71.    Plaintiff attempted for several months to resolve the dispute as to unpaid claims without resort to litigation. These efforts were unsuccessful, and demonstrate the futility of further efforts. Plaintiff's counsel communicated with representatives of Aetna Defendants repeatedly in efforts to resolve issues leading to non-payment of claims.  Prior to filing this lawsuit, Plaintiff provided Aetna Defendants with multiple letters and documents substantiating the subject claims, but which Aetna had refused to provide payment.  This list identified the patients/enrollees to whom the services were rendered, the date of service, and the outstanding balance. Aetna Defendants have still failed to pay such claims.

## FIRST CAUSE OF ACTION

## ERISA CLAIMS

(Against Aetna Defendants and DOES 1—50)

72.    Plaintiff incorporates by reference each and every preceding allegation as though fully set forth herein.

73.    As to those claims to which the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001 et seq. ("ERISA"), provisions are

COMPLAINT

applicable, Plaintiff makes the following allegations and claims for relief.

74.     As alleged herein, Plaintiff has standing to assert ERISA claims in this lawsuit by its status as a health care provider that:

a) has received a valid assignment of benefits from each of the participants or beneficiaries the claims for which are listed on Attachment "A";

b) Plaintiff's assigned rights from each patient arise from employee benefit plans that do not contain a prohibition on assignment, or do not have such a prohibition that is unambiguous and valid, and any issues relating to assignment have been waived by the failure to raise such issues in conjunction with adjudication of the claims at issue;

c) Plaintiff has exhausted administrative remedies, or taken such action that exhaustion is excused, or that the facts alleged elsewhere demonstrate that further efforts are certainly futile;

d) There are no other impediments to Plaintiff's enforcement of rights against defendants.

75.     To the extent that Aetna Defendants contend that State law claims of Plaintiff are preempted by ERISA, Defendants bear the burden of establishing the applicability of ERISA and such preemption.

76.     Plaintiff is informed and believes and thereon alleges that Aetna Defendants have possession of or access to Plan documents and/or contracts under which Aetna Defendants contracted to pay claims for medical services on behalf of the patients the services for which are identified on Attachment "A," and for which it acted as actual or *de facto* Plan Administrator and adjudicated claims for medical benefits and related duties.

77.     Plaintiff is informed and believes and thereon alleges that Aetna Defendants effectively controlled the decision of whether to honor or deny a

claim under the healthcare benefit programs applicable to the claims listed on Attachment "A."

78.     Plaintiff is informed and believes and thereon alleges that the Plans under which the patient's whose claims are listed on Attachment "A" received healthcare benefits were not involved in adjudicating individual claims for healthcare benefits.   This function was performed by Aetna Defendants. Therefore, Aetna Defendants served as *de facto* Plan Administrator in adjudicating the claims for benefits at issue in this litigation.

79.     Plaintiff is informed and believes and thereon alleges that Aetna Defendants were obligated by contract and/or ERISA law to pay the legitimate claims for benefits listed on Attachment "A" at the time Plaintiff provided the listed services.  Although the Plans identified herein remain liable for paying Plan benefits and taking actions required by ERISA, the Aetna Defendants are an appropriate defendant in that they had assumed the obligation to pay such claims for benefits.

## ERISA - 29 U.S.C. §1132(a)(1)(B) –
## RECOVERY OF MEDICAL BENEFITS DUE

80.     29 U.S.C. § 1132(a)(1)(B) provides in pertinent part, as follows:

(a) Persons empowered to bring a civil action.

A civil action may be brought—

(1) by a participant or beneficiary--

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

81.     The claims listed on Attachment "A," all of which fall within the coverage of ERISA as indicated herein, are entitled to recover from the Aetna Defendants for the medical benefit payments due for the services provided by Plaintiff.  These benefits are within the coverage of their respective policies and

Smaili & Associates

COMPLAINT

Plans under the health plans which qualify as employee welfare benefit plans under ERISA, 29 U.S.C. §1002 et seq.  The rights needed to collect these benefit payments have been assigned to Plaintiff.

82.    Aetna Defendants are a proper party to this action based upon 29 U.S.C. 1132(a)(1)(B), in that Aetna Defendants:

      a) controlled administration of the benefit claims aspect of the Plans providing benefits to the patients listed on Attachment "A";

      b) replaced the listed "Plan Administrator" as the party with authority to pay benefit claims;

      c) replaced the listed "Plan Administrator" as the party with the responsibility to pay benefit claims;

      d) was listed as an "administrator" in Plan documents providing benefits to the patients listed on Attachment "A," thereby qualifying as an "Administrator" as defined in 29 U.S.C. §1002 (16)(A);

      e) was responsible by contract with the Plan to pay covered claims;

      f) was responsible by contract with the Plan and by insurance contract to pay valid claims, in situations in which coverage under the Plan was through an insurance policy;

      g) functioned as the Plan Administrator when benefit claims were submitted;

      h) was the party to whom the other Plan Administrator delegated its duties for claims adjudication and payment;

      i) is either individually responsible to pay claims from its funds pursuant to the Plan coverage, for which it is reimbursed by the Plan, or is provided funds with which to pay covered

claims, which it is then individually responsible;

j)   responsible for administering and interpreting the plan and was solely responsible for a denial of benefits;

k)   was a de facto Plan Administrator with regard to claims payment; and/or

l)   is a logical party to an action to recover benefits due under the terms of the respective Plans and to enforce her rights under the terms of the Plans.

83.   Plaintiff is informed and believes and thereon alleges that Aetna Defendants are a fiduciary and actual or *de facto* Plan Administrator under these plans, and made all decisions regarding allowance of claims for benefits under the plans applicable to the patients (participants and beneficiaries) identified in Attachment "A".

84.   Plaintiff incorporates the allegations set forth above. Plaintiff seeks medical benefit payments due and owing to patients listed on the attached Attachment "A," as payment for healthcare services more fully described herein, provided to such plan participants and beneficiaries under the health plans which qualify as employee welfare benefit plans under ERISA, 29 U.S.C. §1002 et seq., including, without limitation 29 U.S.C. §l132(a)(1)(B).

85.   Plaintiff is the assignee of the plan participants and beneficiaries listed on Attachment "A" and is entitled to all the same protections and benefits under the plans and to stand in their place to enforce and clarify their rights under 29 U.S.C. §1132(a)(1)(B).

86.   Aetna Defendants had the obligation, pursuant to its contract with the Plan for each participant or beneficiary listed on Attachment "A" whose benefits were provided pursuant to an ERISA plan, to pay claims for benefits within the coverage of the Plan made by or on behalf of the participant or beneficiary listed. As such, Aetna Defendants are individually liable to Plaintiff

for payment of the services provided by Plaintiff to the patients referenced on Attachment "A" whose benefits are provided through an ERISA plan, as previously submitted to Plaintiff, which are identified herein and which claims are confirmed in records maintained by Aetna Defendants.

87.    Each Plan identified herein is likewise liable to Plaintiff under the terms of the Plan applicable to the participants and beneficiaries listed on Attachment "A" at the time Plaintiff rendered services to such individuals.

88.    Plaintiff, as a health care provider who has received a valid assignment of benefits owed to such patients pursuant to an employer health plan, with no valid prohibition on such assignments, is entitled to recover these benefits from Aetna Defendants. Plaintiff and the participants/beneficiaries have been denied benefits under these plans through Aetna Defendants' failures to pay benefits which are due and owing under these plans. Aetna Defendants have breached their contracts and statutory duties relating adjudication of the claims made to receive Plan benefits.

89.    Plaintiff is informed and believes and thereon alleges that Aetna Defendants' adverse benefit determinations were not only against the weight of the information available to Aetna Defendants, but constituted denials in an arbitrary and/or capricious manner unsupported by the evidence, and under circumstances demonstrating that its decisions were based upon factors other than the application Plan criteria to the claims for benefits.

90.    Plaintiff is informed and believes and thereon alleges that Aetna Defendants' conflicts of interest and bias, described above and incorporated herein, and claims adjudication irregularities also described herein, and about which discovery will be sought, require that the Court conduct a de novo review of the decisions of Aetna in adjudicating the claims for services provided to the patients referenced on Attachment "A".

91.    Plaintiff's assignors have been denied assigned benefits in the

COMPLAINT

reimbursement of charges described further herein, which Aetna Defendants and the respective Plans have wrongly withheld or denied under the terms of the plans.

92.    Plaintiff seeks an award of attorneys' fees incurred in obtaining these medical benefits pursuant to 29 U.S.C. §1132(g)(1).

93.    Plaintiff is informed and believes and thereon alleges that Aetna Defendants failure to process and adjudicate the subject claims was arbitrary and capricious, and violated the terms of the respective Plans.

94.    Plaintiff is informed and believes and thereon alleges that Aetna Defendants denied Plaintiff's claim despite the medical necessity of the same.

95.    Plaintiff has been denied assigned benefits of approximately $152,669.98, for its services, which the plan administrators have wrongly withheld or denied under the terms of the plans.

96.    Aetna Defendants' bias, conflict of interests and procedural irregularities and lack of due process described in this Complaint require a hearing so that the Court can consider these matters into account in conjunction with Aetna Defendants' actions in adjudicating claims filed by Plaintiff.

**ERISA – 29 U.S.C. §1133 AND 29 C.F.R. 2560.503-1(g):**
**FAILURE TO PROVIDE A FULL AND FAIR REVIEW**

97.    Aetna Defendants and the applicable Plans have failed to provide a full and fair review of the disallowance of Plan benefits, as required by 29 U.S.C 1133:

> In accordance with regulations of the Secretary, every employee benefit plan shall-
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

98.    Plaintiff is informed and believes and thereon alleges that Aetna Defendants failed to comply with the applicable regulations, found at 29 CFR 2560.503-1.  For example, Aetna Defendants and the Plan failed to comply with 29 CFR 2560.503-l(g), which provides in pertinent part, as follows:

(g) Manner and content of notification of benefit determination.

(1) Except as provided in paragraph (g)(2) of this section, the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104b-l(c)(l)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant –

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v) In the case of an adverse benefit determination by a group health plan or a plan providing disability benefits,

(A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request; or

(B) If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request.

99.    Plaintiff is informed and believes and thereon alleges that Aetna Defendants failed to:

    a) Set forth the specific reason(s) for the refusal to pay the covered benefits as required by 29 CFR §2560.503-1(g)(1)(i);

    b) Identify the "plan provision" that supported the refusal to actually pay the covered benefits as required by 29 CFR §2560.503-1(g)(1)(ii);

    c) Describe any additional material or information necessary for the Aetna Defendants' insureds or Plaintiff to receive the benefit as required by 29 CFR §2560.503-1(g)(1)(iii);

    d) Describe the applicable plan review procedures and time limits applicable thereto as required by 29 CFR §2560.503-1(g)(1)(iv);

    e) Advise the recipient of the right to bring a civil action under

COMPLAINT

§502(a) of ERISA following the adverse benefit determination review as required by 29 CFR §2560.503-1(g)(1)(iv);

f) Identify the rule or protocol that it relied upon or state that the rule or protocol would be provided upon request as required by 29 CFR §2560.503-1(g)(1)(v)(A); and

g) Did not provide any appeal rights – much less the type of rights set forth in ERISA regulations, 29 CFR §2560.503-1(h).

100. Plaintiff is further informed and believes and thereon alleges that because Aetna Defendants failed to comply with the ERISA claims procedure, any administrative remedies are deemed exhausted pursuant to 29 CFR §2560.503-1(1).

101. Plaintiff is further informed and believes and thereon alleges that Aetna Defendants failed to notify Plaintiff and/or the Participants/Beneficiaries of the true and complete reasons for its adverse claim determinations.

102. Plaintiff is further informed and believes and thereon alleges that Aetna Defendants and the Plans have further violated these provisions because they have failed to have safeguards to assure that plan provisions are applied consistently with respect to similarly situated claimants, in that claims of claimants who utilized out of network providers are treated differently than claimants who utilized in-network providers, in violation of 29 CFR 2560.503-1(b)(5).

103. Plaintiff is informed and believes and thereon alleges that Aetna Defendants failed to notify claimants or Plaintiff of any prohibition on an assignment of rights as required by 29 CFR 2650.503-1(g)(l)(i) and (ii).

104. Plaintiff is informed and believes and thereon alleges that as to any Plan in which Aetna Defendants contend that the participant/beneficiary must personally file a claim and/or obtain pre-surgical permission, Aetna Defendants and the Plans failed to establish and maintain reasonable claims procedures as

required by 29 CFR §2560.503-1(b)(3).  Such requirements violate Section (b)(4) in that claims procedures are not deemed reasonable unless "the claims procedures do not preclude an authorized representative of claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination."

105.  Plaintiff is informed and believes and thereon alleges that to the extent that the Plans prohibit the filing of a health care claim on behalf of a claimant by a health care provider who holds an assignment of benefits because the health care provider is not a member of the Aetna network, this is an unreasonable claims procedure in that this provision unduly hampers the filing of claims of claimants in violation of section of 29 CFR 2560.503-1(b)(3); and the claims procedure precludes an authorized representative of the claimants from acting on behalf of the claimant in pursuing a benefit claim and appeal, in violation of 29 CFR 2560.503-1(b)(4).

106.  Plaintiff is informed and believes and thereon alleges that the explanations of reasons for adverse benefit determinations provided by Aetna Defendants, if any, was inadequate to explain to Plaintiff and the participant/beneficiary the true reason for the determination and the information needed to allow the claim.

107.  Plaintiff is informed and believes and thereon alleges that the explanations of reasons for adverse benefit determinations was inadequate to explain to Plaintiff and the participant/beneficiary the particular portions of the Plan relied upon.

108.  Plaintiff is informed and believes and thereon alleges that Aetna Defendants failed to consider all information submitted in conjunction with the service for which payment was sought.  For example, Aetna Defendants failed to consider the information submitted in conjunction with the professional component of the same service, which Aetna Defendants found sufficient to

enable it to allow or pay the claim.  Moreover, Aetna Defendants did not notify Plaintiff of the discrepancy between its determination of the professional and technical component claims for the same service, so that this could be addressed in the appeal review process.

109. Plaintiff is informed and believes and thereon alleges that in light of the failure to provide a full and fair review, the adverse benefit determinations are entitled to no deference and should be reviewed de novo; Aetna Defendants and the Plans are precluded from asserting failure to exhaust administrative remedies; Aetna is limited to the reasons stated in the communications as justification for its adverse determination; and to the extent of a conflict between any Administrative Record maintained by Aetna Defendants and the communication of reasons for the determination, Plaintiff is entitled to provide supplemental information to respond to such reasons.

### ERISA – 29 U.S.C. 1132(a)(3) -BREACH OF FIDUCIARY DUTY
### 29 U.S.C. 1132(c) - FAILURE TO PROVIDE PLAN DOCUMENTS

110.  To the extent that Aetna Defendants breached their fiduciary interests by the biased and unfair treatment of claims, and failed to provide information regarding the true reasons for disallowance of medical benefits inherent in making a claim for such benefits, Plaintiff alleges that Aetna Defendants' actions violated 29 U.S.C. §1132(c) and 29 U.S.C §1132(a)(3).

### PLAINTIFF IS ENTITLED TO ATTORNEYS FEES
### PURSUANT TO 29 U.S.C. §1132 (g)(1)

111.  Plaintiff seeks an award of attorneys' fees pursuant to 29 U.S.C. §1132(g)(1), which provides in pertinent part:

(g)  Attorney's fees and costs; awards in actions involving delinquent contributions

(1) In any action under this subchapter [other than an action described in paragraph (2)] by a participant, beneficiary, or

fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

112.    An award of attorneys' fees against Aetna Defendants is particularly appropriate in this matter in light of the fact that Aetna Defendants failed to pay for benefits on claims submitted for Plaintiff's services, although Aetna Defendants had made the determination that the services were allowable under the Plan and/or insurance policy and had allowed payment for the professional component of the same service.

113.    The circumstances surrounding this inconsistent treatment of claims suggest bad faith on the part of Aetna Defendants.

## SECOND CAUSE OF ACTION
### BREACH OF CONTRACT
### (Against Aetna Defendants and DOES 1—50)

114.    Plaintiff incorporates by reference each and every preceding allegation as though fully set forth herein.

115.    Aetna Defendants' enrollees had written contracts of insurance with Aetna Defendants under which Aetna was obligated to pay for the medical services which were provided to them by Plaintiff.  Aetna Defendants breached their contracts with the enrollees whose claims are listed on Attachment "A" by failing and refusing to pay for their necessary medical services.

116.    As the assignee of Aetna Defendants' enrollees, Plaintiff has sustained damages as a direct result of Aetna Defendants' breach of contract for which Aetna Defendants are liable to Plaintiff.

## THIRD CAUSE OF ACTION
### *QUANTUM MERUIT*
### (Against Aetna Defendants and DOES 1—50)

117.    Plaintiff incorporates by reference each and every preceding allegation as though fully set forth herein.

Smaili & Associates

COMPLAINT

118.    Plaintiff provided valuable medical services to Aetna Defendants and its insureds.   Aetna Defendants are the party sought to be charged for these valuable services.    Aetna Defendants accepted Plaintiff's services under circumstances where Aetna Defendants were reasonably notified that Plaintiff, in providing its services, expected Aetna Defendants to pay for them.

119.    Therefore, Plaintiff is entitled to recover from Aetna Defendants on its equitable claim for *quantum meruit*.

120.    Equitable remedies are further available pursuant to ERISA law.  To the extent that case law has held that monetary equitable remedies are not available pursuant to ERISA, Plaintiff submits that such holdings are incorrect and that a change in such common law is appropriate.

## REQUEST FOR RELIEF

Therefore, Plaintiff demands a jury as to all non-ERISA claims subject to a right to trial by jury, and requests that Aetna Defendants be summoned to appear and answer, and that upon trial, Plaintiff be awarded judgment against Aetna Defendants for the following:

1.  Actual damages of not less than the total unpaid amount of Plaintiff's usual charges for its services to the patients whose claims are listed on Attachment "A" as damages for breach of the Plan agreements, and as benefits payable pursuant to 29 U.S.C. §1132(a)(1)(B);

2.  Applicable statutory penalties and interest, including penalties under 29 U.S.C. §1132(c) prejudgment interest;

3.  Plaintiffs court costs and reasonable attorneys' fees, including fees as provided in 29 U.S.C. §1132(g)(1);

4.  Pre- and post-judgment interest at the highest rate allowed by law;

5.  Injunctive and declaratory relief clarifying the rights of beneficiaries, and requiring Aetna Defendants to cease the wrongful rejection of

Plaintiff's claims for services, and to enjoin breaches of fiduciary duties pursuant to 29 U.S.C. §1132(a)(3), and to arrest, correct and prevent acts and omissions by Aetna Defendants that violate the Plan and/or ERISA, as described herein;

6.  That as to any patient whose claims are found to not have been administratively exhausted, and that such exhaustion would not be futile, that a stay be granted as to those patients' claims until the appeals procedure is completed;

7.  For an evidentiary hearing as to Aetna Defendants' bias, conflict of interest in light of its apparent effect upon the adjudication of claims submitted by Plaintiff;

8.  Actual damages for Aetna Defendants' breach of contract;

9.  Actual damages in an amount reasonable to compensate Plaintiff for the services rendered and provided;

10. Such other and further relief to which Plaintiff may be justly entitled.


Dated: February 21, 2017          **SMAILI & ASSOCIATES, P.C.**


By: _____
        Jihad M. Smaili, Esq.
        Adam K. Obeid, Esq.
        Attorney for Plaintiff

# ATTACHMENT "A"

| Claim numbers/ID | Date of service/Description | Amounts billed/unpaid |
| --- | --- | --- |
| Claim Number EHFBDJBW700/701<br><br>Insured ID Number W200075883 | 2/26/2014<br><br>Nasal septal reconstruction/septoplasty/resection; bilateral maxillary antrostomy with removal of tissue bilaterally nasal sinus endoscopy; bilateral total ethmoidectomy and bilateral sphenoid sinusotomy with removal of tissue; bilateral frontal sinusotomy; bilateral submucous resection of inferior turbinates. | $108,981.39 |

COMPLAINT

| Claim numbers/ID | Date of service/Description | Amounts billed/unpaid |
| --- | --- | --- |
| Claim Number EG35DV9MH00 Insured ID Number W191329656 | 3/14/2014 Nasal septal reconstruction/ septoplasty/submucous resection of deviated nasal septum with caudual septal realignment to nasal spine and resection of complicated vomerine spur and maxillary crest linear obstruction; bilateral submucous resection of inferior turbinates. | $43,688.59 |

COMPLAINT